## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

CASE NO.  #: 2:10-cr-20403-NGE-MKM-1

v.

KWAME M. KILPATRICK,
 Defendant-Petitioner.

_____/

Assigned to: District Judge Nancy G. Edmunds

Case title: United States of America v. Kilpatrick et al

Related Case:        2:17-cv-12171-NGE

Appeals court case numbers: 12-1987 U.S. Court of Appeals - Sixth Circuit, 13-1556
U.S. Court of Appeals - Sixth Circuit, 13-2500 U.S. Court of Appeals - Sixth Circuit,
17-2208 U.S. Court of Appeals - Sixth Circuit, 17-2208 U.S. Court of Appeals - Sixth
Circuit, 19-1683 U.S. Court of Appeals - Sixth Circuit

### MOTION FOR TERMINATION OF SUPERVISE RELEASE

NOW COMES, Defendant, KWAME MALIK KILPATRICK, (hereinafter, "Mr.
Kilpatrick"), by and through his attorney, BRANDON BYRD, pursuant to 18 U.S.C.
§ 3583(e)(l), respectfully moves this Honorable Court to terminate his term of
supervised release and grant permission to travel. In support of this motion, Mr.
Kilpatrick submits the following.

## I.     Background:

On March 11, 2013, a jury found Mr. Kilpatrick guilty of twenty-four of the thirty counts brought against him: one count of RICO conspiracy, 18 U.S.C. § 1962(d); four counts of extortion, 18 U.S.C. § 1951; one count of attempted extortion, 18 U.S.C. § 1951; one count of bribery, 18 U.S.C. § 666(a); eleven counts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343; five counts of subscribing a false tax return, 26 U.S.C. § 7206(a); and one count of income tax evasion, 26 U.S.C. § 7201. (Dkt. 277.)

The Court sentenced Kilpatrick to be imprisoned for a term of 336 months. (Dkt. 516.) The Sixth Circuit affirmed Mr. Kilpatrick's convictions, see United States v. Kilpatrick, 798 F.3d 365, 372 (6th Cir. 2015). While the Sixth Circuit affirmed his convictions, it reversed the Court's restitution award of $4,584,423 to the City of Detroit's Water & Sewerage Department. Kilpatrick, 798 F.3d at 387-90. On remand, the Court ordered Defendant to pay restitution in the amount of $1,520,653.50. United States v. Kilpatrick, No. 10-20403, 2017 U.S. Dist. LEXIS 140562, at *1 (E.D. Mich. Aug. 31, 2017). Thereafter, the Supreme Court denied his petition for a writ of certiorari, (Dkt. 577).

Mr. Kilpatrick timely filed this pro se motion to vacate his sentence under 28 U.S.C. § 2255. (Dkts. 599, 601, 605, 610.) The Government filed a response, (Dkts. 613, 626), and Kilpatrick filed a reply as well as a number of briefs and exhibits, (Dkts. 620, 621, 622, 623, 628, 629, 630, 631, 632, 633, 638). Kilpatrick's section 2255 motion was denied.

## II.    Executive Grant of Clemency:

On January 21st, 2021, President Donald J. Trump granted Mr. Kilpatrick executive clemency, noting that "it has been made to appear that the ends of justice do not require the said KWAME MALIK KILPATRICK to remain confined until his currently projected release date of January 18 2037, and **the safety of the community will not be compromised if he is released"**. (See attachments).

## III.    Relevant Background and Facts:

Mr. Kilpatrick, the former mayor of Detroit, was sentenced to 28-years in Federal Prison for Public corruption. After being granted clemency, he was re-sentenced to time served and a period of supervised release of three (3) years. Mr. Kilpatrick spent approximately 8-years in Federal prison and almost 2-years on supervised release.

While incarcerated and on supervision, Mr. Kilpatrick demonstrated that he has matured and learned from his mistakes. Mr. Kilpatrick worked hard to become a responsible, law-abiding, and productive citizen. In prison Mr. Kilpatrick took many programs, relevant herein Authentic Manhood, Bible courses and he has assisted many other inmates with their cases.

Mr. Kilpatrick has done everything in his power to rehabilitate himself as demonstrated by his genuinely exceptional accomplishments and meritorious prison record, but does not seek to justify, diminish, or detract from the seriousness of his offenses. Mr. Kilpatrick unequivocally accepts responsibility for his criminal conduct.

There is no excuse for Mr. Kilpatrick's past actions. Today he understands and has made a conscious decision to prove to this Honorable Court and all affected by his

actions that he has taken the necessary steps to rehabilitation. In his pursuit of rehabilitation, Mr. Kilpatrick made exceptional strides towards self-improvement. Mr. Kilpatrick' s record of rehabilitation can be considered extraordinary and spells out what Congress intended when it stated that a sentence should be sufficient but not greater than necessary to achieve the goals of sentencing one of which is rehabilitation.

Mr. Kilpatrick has completed numerous rehabilitative programs and also maintained steady employment while in prison producing excellent work reports. Mr. Kilpatrick worked in the chapel 6 out his 8-years in prison and was the chapels worship leader for about three (3) years.  Currently, Mr. Kilpatrick is re-married, living in Atlanta Georgia, starting his own ministry, and advocating for inmates inside of State and Federal prisons.

In sum, Mr. Kilpatrick has compiled a remarkable record of rehabilitation showing that if released from his term of supervised release, he is not a danger to the public. {See some of his letters for support of his petition for Executive Clemency attached hereto}.

Mr. Kilpatrick respectfully requests that the Court recognize the severe penalty he has paid for the offenses charged in this matter and the progress he has made over the last 9 years, by terminating his term of supervised release because he is no longer in need of supervision.

## JURISDICTION

This Court has jurisdiction pursuant to 18 U.S.C. Section 3583(e) to "terminate a term of supervised release...[at] any time after one year of supervised release pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation..." *Id.* See also, 18 U.S.C. Section 3564(c), both incorporating Federal Rules of Criminal Procedure (i.e. Rule 32.l(c)).

## DISCUSSION

Title 18 U.S.C. Section 3583(e) directs courts to consider the purposes of sentencing set forth in 18 U.S.C. Section 3553(a)(l), (a)(2)(B), (a)(2)(D), (a)(4), (a)((5), (a)(6) and (a)(7) in deciding whether to terminate a term of supervised release. The judicial conference has identified the following criteria to assess eligibility for early termination: "Officers should consider the suitability of early termination for offenders as soon as they are statutorily eligible. Here, Section- 3583(e) sets the eligibility at "any time after the expiration of one year of supervised release." (3583(e)(l)). The general criteria for assessing whether a statutorily eligible offender should be recommended to the Court as an appropriate candidate for early termination are as follows:

1. stable community reintegration (i.e. residence, family, employment);

2. progressive strides toward supervision objectives and in compliance with all the conditions of supervision;

3. no history of violence (e.g. sexual assaults, predatory behavior or domestic violence);

4.    no recent arrest or convictions (including unresolved pending charges), or ongoing, uninterrupted patterns of criminal conduct;

5.    no recent evidence of alcohol or drug abuse;

6.    no recent psychiatric episodes;

7.    no identifiable risk to the safety of any identifiable victim; and

8.    no identifiable risk to the public safety based on the Risk Assessment Prediction Index (RPI) See, Guide to Judiciary Policy, Vol. 8E, Chapter 3, Section 30.l0(b), "Early Termination" (Monograph 109) (revised 2010).

Pursuant to the policy "there is a presumption in favor of recommending early termination for supervised defendants after the first 18 months if they are not career offenders, sex offenders, or terrorist" and they are "free from moderate or high severity violations." Id. Section 30.l0(g). Courts have long advised early termination of defendants that meet the above criteria. "Terminating appropriate cases before they reach full term saves resources and allows officers to focus on offenders who continue to pose the greatest risk of recidivism." Honorable Robert Holmes Bell, Chair of the Committee on Criminal Law of the Judicial Conference (Issuing a Memorandum to all United States District Judges, February 16, 2012). Judge Bell's Memorandum in 2012 noted that supervision cost approximately $3,938 per year, per case. This cost has increased exponentially.

Lastly, an Analysis by the Administrative Office of the Courts indicates that offenders who received early termination were "arrested less often, for less serious charges, and were sentenced to terms of imprisonment less often." Thus, "[f]rom a

policy standpoint, it appears that the above criteria, when properly applied, does not jeopardize the public safety." *Id.*

Applying the above criteria to this case, Mr. Kilpatrick's file establishes that he meets this criterion, thus is a candidate for early termination. Mr. Kilpatrick has complied with all the terms and conditions of his supervised release. His Probation Officer can attest that he has had no problems throughout his almost 2-year period, thus is on "low intensity." Mr. Kilpatrick has proven that he is no threat to public safety while on supervised release. Conversely, Mr. Kilpatrick has been an asset to the community through volunteering his services and working with the community. Moreover, Mr. Kilpatrick's age, compliance with all the conditions of supervised release, his additional and continuous work in the community, and his and overall commitment to self-improvement, should serve as proof positive of Mr. Kilpatrick's commitment to becoming a better person and substantiate that he has no further interest, whatsoever, in crime and fulfills all the applicable Section 3553(a) factors favoring early termination.

Under parallel circumstances the case law favors early termination. *See*, *United States v. Friend*, Case No. 13-226 (W.D. PA 2019) (granting early termination of supervised release after Friend had served 21 of 36 months of supervision based on his age, compliance with all the conditions of supervision, although nothing exceptional, but meeting the criteria under Section 3553(a) and "Probation Department agreeing with the request"); *United States v. Harris*, 258 F. Supp. 3d (D.C. Dist. Ct. 2017) (reducing term of supervised release from 120 months to 60

months, time served after defendant served 5 of his 10 years in compliance with all the standard terms and conditions of supervised release); *United States v. Epps*, 707 F.3d 337 (D.C. Cir. 2013) (holding that early termination is appropriate where defendant has complied with his standard conditions and relief is warranted under the Section 3553(a) factors); *United States v. Harris*, 689 F. Supp. 2d 692 (S.D.N.Y. 2010) (granting early termination to eliminate obstacles to professional advancement and employment after consideration of the 3553(a) factors)); *United States v. Rentas*, 573 F. Supp. 2d 801 (S.D.N.Y. 2008) (granting relief finding defendant "law abiding behavior and review of 3553(a) factors favored early termination").

Finally, Mr. Kilpatrick has been invited to an event to speak with various churches and film artist who wish to participate, offering help to prisoners returning home, which helps to reduce recidivism. Probation has previously approved travel but the 14-day notice to travel can cause a hardship on Mr. Kilpatrick, his family, and growing ministry.

Mr. Kilpatrick believes that at this time the Probation Department may be overwhelmed due to the number of probationers that are on the roster. He actually sympathizes with their workload. As such, Mr. Kilpatrick was told to try and file this motion so that he can attend the affairs and continue the work of helping others.

In sum, Mr. Kilpatrick has not had any negative incidents since he has been on supervised release. This fact can be verified with the Probation Department. Lastly, Mr. Kilpatrick apologizes to the Court for having to take the Court's time for this request as he is also aware of the tremendous workload of the Court.

**History and Characteristics of Defendant Kilpatrick:**

Letters for support of Mr. Kilpatrick's petition for Executive Clemency show that friends, family members, and community associates have provided letters written on behalf of Mr. Kilpatrick. These letters demonstrate the positive, rehabilitated man that Mr. Kilpatrick is today. These letters help prove that Mr. Kilpatrick does not require more supervision.

The time served in this case allowed Mr. Kilpatrick to learn from his mistakes and understand that his decisions are not without consequences, without wholly depriving him of the opportunity for rehabilitation and being a productive member of society. If the Court were to deny relief herein, it would severely damage that potential and ability to provide for his growing family and ministry.

The letters provided by Mr. Kilpatrick's loved ones demonstrate that he is not a man incapable of redemption and rehabilitation. They show that he cannot be defined solely by his conduct in this case. Those who know Mr. Kilpatrick best uniformly describe him as kind, caring, dedicated, and responsible. All agree that this offense was out of character for him and not indicative of the man he is or the man he will continue to become.

Mr. Kilpatrick has already demonstrated that he is willing and capable of positively contributing to society. He is married, the father of a new son, and an ordained minister who has served as a mentor and role model for his friends, family members, and community. He has taken an active role in his church's mission to not only preach and teach the word of God, but also live according to the word as well.

Mr. Kilpatrick has spoken to young kids, college students and adults about making positive choices in their lives. His compassionate heart has been demonstrated by his work, and willingness to help the people in his community, and other communities around the United States. Mr. Kilpatrick also serves as a mentor to men and women of various ages and stages in their lives. These are just some examples of the good deeds remembered most by the people who are closest to Mr. Kilpatrick.

None of these good deeds excuse Mr. Kilpatrick's criminal behavior. His good heart and dedication to his family and community do not change the detriment caused by Mr. Kilpatrick's criminal behavior, but they do demonstrate that Mr. Kilpatrick is not irredeemable and show his commitment to discouraging others from making the same mistakes as Mr. Kilpatrick and self-improvement. Mr. Kilpatrick's actions in this case has demonstrated a disrespect for the law, but they did not demonstrate a man who can never be a positive member of society when viewed in the light of the totality of his life.

If given the chance, Mr. Kilpatrick is capable of becoming a wholly productive person. He has already demonstrated his potential to do so in the past. Mr. Kilpatrick the former mayor of Detroit, worked a legitimate job for the city of Detroit, and, held several jobs before and after he held that position. Mr. Kilpatrick earned his college degree and a juris doctorate. He asks now that the Court grant him the opportunity to show that he can expand on this good conduct and make up for the failings encapsulated by the offense conduct in this case.

## Restitution

Under the judgement in Mr. Kilpatrick's criminal case, imposed September 25, 2017, signed by the Honorable Nancy G. Edmunds, "[Mr. Kilpatrick] shall receive credit for all payments previously made toward any criminal monetary penalties imposed. Joint and Several. The amount of Restitution is $1,520,653.50." (See Judgement). "Defendant WILL BE GIVEN CREDIT AGAINST THE AMOUNT OWED ON THE $1,520,653.50 money judgment if, and to the extent that, the forfeiture of the specific assets listed in co-defendant Bobby Ferguson's Amended Preliminary Order of Forfeiture (Docket #409) becomes final and the assets are liquid and/or are liquidated. Defendant is jointly and severally liable to pay the money judgments with his co-defendant Bobby Ferguson." (See Judgement).

In this case, The Amended Order of Forfeiture has in-fact become final and assets have been liquidated. There are also seized liquid assets as well under the forfeiture order. These liquidated and liquid amounts should be applied as a credit against the amount that Mr. Kilpatrick owes on the $1,520,653.50 money judgment. Heretofore, none of the liquidated assets, nor the seized liquid assets have been applied as a credit to Mr. Kilpatrick's owed money judgment, as they should per the Court's Judgment. The final liquidated and liquid asset amounts total more than $1,520,653.50. The amount of the money judgment owed by Mr. Kilpatrick. Therefore, Mr. Kilpatrick's money judgment in this case has been satisfied.

## CONCLUSION

For the foregoing reasons Kilpatrick respectfully requests this Court grant his request for early termination of his remaining term of supervised release and declare Mr. Kilpatrick's money judgement to be satisfied. Early Termination of Kilpatrick's Supervised Release is Appropriate at this Time his personal trajectory is the right one and leaving the criminal justice system now, for good, is the appropriate next step on his path. Kilpatrick's petition for Executive Clemency was accompanied by more than 32,000 petition signatures.

Denying Kilpatrick, the opportunity for a second chance, could potentially stymy his ability to positively impact the many individuals who are inclined to make the same terrible decisions that he once did.  As well as engage those who already have destroyed their lives, and are looking for inspiration, wisdom, and encouragement to transform their thinking, their lives.

Respectfully submitted,

/s/ Brandon C. Byrd
BRANDON C. BYRD
Attorney for Defendant
    KWAME MALIK KILPATRICK
17108 Mack Ave, Suite 106
Grosse Pointe, MI 48230
(313) 409-2775
bbyrd@byrdlegal.net

Date: December 27, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2022 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

Respectfully submitted,

*/s/* Brandon C. Byrd
BRANDON C. BYRD
Attorney for Defendant
     KWAME MALIK KILPATRICK
17108 Mack Ave, Suite 106
Grosse Pointe, MI 48230
(313) 409-2775
bbyrd@byrdlegal.net