UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

CASE NO: 10-CR-20403

v.

HON. NANCY G. EDMUNDS

KWAME KILPATRICK,

    Defendant.
_____/

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE (ECF No. 685)

Defendant Kwame Kilpatrick should remain on supervised release to ensure payment of his significant restitution obligation to the IRS and to deter the reemergence of any criminal conduct. Kilpatrick cannot identify any substantive harm caused him by the full completion of his supervision. Finally, contrary to the claims of his attorney, Kilpatrick continues to claim that he is innocent of the 24 felony charges of which the jury convicted him at trial. Kilpatrick's continued lack of remorse and denial of guilt and responsibility counsel in favor of continuing his supervised release.

## FACTUAL BACKGROUND

In March 2013, a jury convicted Kilpatrick of 24 felony counts of racketeering, extortion, bribery, wire fraud, tax evasion, and conspiracy related to his corrupt conduct as the Mayor of the City of Detroit and as a state legislator. Because of his serious criminal conduct and the real damage he did to the city, this Court sentenced him to 28 years in prison. The convictions and sentence were upheld on appeal. In January 2021, President Donald Trump commuted Kilpatrick's prison sentence to the time he had already served, but maintained his three-year supervised release obligation, as well as the restitution order.

After Kilpatrick's release from prison in January 2021, he has been under supervised release for approximately 24 months. On December 27, 2022, Kilpatrick filed the instant motion for early termination of supervised release. He claims that he is no longer a threat to the community, has been rehabilitated, has been compliant with the terms of supervision, and needs to be free to travel to pursue his career. Kilpatrick's attorney further asserts that Kilpatrick "unequivocally accepts responsibility for his criminal conduct." ECF No. 685, PageID.18862.

## STANDARD OF LAW

Early termination of supervised release is permitted after the expiration of one year of supervised release, if the Court is satisfied that such action "is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. §

2

3583(e)(1). Early termination is not warranted as a matter of course and is only permitted where the defendant shows changed circumstances—such as exceptionally good behavior. *United States v. Atkin*, 38 F. App'x 196, 198 (6th Cir. 2002). Factors to be considered include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need to afford adequate deterrence to criminal conduct, (3) the need to protect the public from further crimes of the defendant, (4) the need to provide the defendant with needed education or vocational training, medical care, or other correctional treatment, (5) the kinds of sentence and sentencing range established or the applicable category of offense committed by the applicable category of defendant, (6) any pertinent policy statement issued by the United States Sentencing Commission, (7) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims. 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). *Id.*

## ARGUMENT

Considering all of the factors set forth above, early termination of supervised release is not warranted in this case. Although Kilpatrick asserts he has been working and integrating into the community, this is not a basis for early termination. As one court has observed, "full compliance with the terms of supervised release is

3

what is expected of a person under the magnifying glass of supervised release and does not warrant early termination." *United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005).  Productive employment, while laudable, does not warrant early termination. *United States v. Olivieri*, 72 F. Supp. 3d 401, 403 (S.D.N.Y. 2014).

Kilpatrick committed very serious crimes, and he still owes a significant amount of restitution.  The current balance of his restitution obligation in this criminal case is $193,303.61 to the Internal Revenue Service.[1]  In addition, in the case of *SEC v. Kwame Kilpatrick*, Case No. 12-CV-12109 (E.D. Mich.), Kilpatrick owes the United States a civil penalty of $390,000, $122,922.87 in disgorgement, and $39,939 in prejudgment interest.  This case related to Kilpatrick's involvement in corruption and the acceptance of bribes in connection with his position as a Trustee of the Detroit pension systems.  Kilpatrick also still owes $854,000 in restitution to the City of Detroit in the state criminal case connected to the text message scandal, and he has not made a payment to the city on this obligation since 2013.  Among other debts, Kilpatrick owes the IRS $634,000 on a federal tax lien for unpaid taxes.

---

[1] Kilpatrick has already received credit for payments made by his co-defendant in this case on the restitution amount owed to the city, which was joint and several.

4

By continuing his supervised release, the Court can ensure that Kilpatrick will be under the supervision of this Court in connection with continuing efforts to collect restitution, fines, taxes, and disgorgement amounts. While incarcerated for years and on supervised release for two additional years, Kilpatrick has only made payments amounting to a little over $5,000 in this case. Remaining on supervised release provides a strong additional incentive for Kilpatrick to not obstruct efforts to collect on his many obligations. As this Court is well aware, Kilpatrick has a long history of seeking to thwart collection on his debts. *See* ECF No. 471, Government Sentencing Memorandum, PageID.15824-25. In *People v. Kilpatrick*, No. 08-010496 (Wayne County Circuit Court, May 25, 2010), the state court judge revoked Kilpatrick's probation in that case and sent him back to jail, finding that he had repeatedly lied during the proceedings about his ability to repay the city on his restitution obligation. Kilpatrick had received hundreds of thousands of dollars from various sources after resigning as Mayor. He then proceeded to spend this money on a lavish lifestyle instead of paying off his restitution obligation.

While under supervision in this federal case in 2022, Kilpatrick and his wife sought to raise $800,000 in order to purchase a residence in a luxurious gated community in Orlando, Florida for his new role as a "Pastor." This effort was later canceled after media attention apparently raised too many questions. Thus, instead of living modestly, with the goal of paying off his obligations, Kilpatrick appears

5

ready and willing to resume his jet-setting lifestyle, with no intention of paying his debt owed to the tax payers stemming from his own tax evasion. By remaining on supervised release, this Court would retain the power to oversee similar efforts in the future by Kilpatrick to avoid his obligations for his own personal benefit.

Although Kilpatrick complains about the limitations placed on his career and desire to go to speaking events, he is currently undergoing only low-intensity supervision by the Probation Office. As the Court knows, this means the limitations placed on Kilpatrick's life and activities by his Probation Officer are not onerous and consist mainly of sending the officer a report on a monthly basis. Thus, the burden on Kilpatrick of continuing his supervision is light.

In his motion, Kilpatrick claims that terminating his supervised release early will allow him to travel to speaking events. Kilpatrick claims that by being off supervision, he will be able to travel around the country freely to meet the needs of potential clients for his work. However, Kilpatrick cannot cite any instance wherein the Probation Officer would not allow him to travel to pursue any business opportunities during his supervision. With the early end of his supervision, this Court would lose part of its ability to ensure that Kilpatrick fully complies with his restitution obligations. Given the light burden and the lack of any need to end early, Kilpatrick's motion should be denied.

Kilpatrick styles himself a "Pastor."  Work as a pastor places an individual in a position of trust over the contributions of his flock and the assets of his church.  Such a position is rife with opportunities for fraud and abuse.  His 24 prior felony convictions in this case evince a willingness to steal and abuse his positions of leadership.  By remaining on supervised release, Kilpatrick has an added incentive to act with integrity in his new career.

Finally, Kilpatrick's attorney claims that the former Mayor "unequivocally accepts responsibility for his criminal conduct."  ECF No. 685, PageID.18862.  However, based on Kilpatrick's own statements in the media during a recent publicity tour, nothing could be further from the truth.  Instead of just being thankful for his early release and accepting responsibility for his crimes and the harm he did to the people of the City of Detroit, Kilpatrick continues to deny the justice of the guilty verdicts rendered by a jury of his peers on the 24 counts of criminal conduct.  In April 2022, during a national television interview on the *Today* show, Kilpatrick flatly denied his guilt.  When asked if he did it, Kilpatrick responded, "Absolutely not."  He did admit that he committed perjury in the state case about his extramarital affair.  But he unequivocally denied committing the 24 federal crimes of which the jury found him guilty.  Similarly, during a television interview on *Fox 2 Detroit* in January 2022, Kilpatrick stated, "Well, I didn't do it," in reference to the crimes underlying his 28-year prison sentence.  Kilpatrick's actions in continuing to deny

7

responsibility to the public, and thereby undermining the community's faith in the justice system, do not epitomize a humble person seeking to regain a quiet life of obeying the law. Instead, his statements demonstrate a need for continued vigilance over a man who refuses to accept the truth of his own guilt.

## CONCLUSION

Kilpatrick is not being harmed by his current level of low supervision. Instead, he is being provided with strong incentives to comply with the law and to not engage in misconduct or criminality in connection with his remaining significant restitution obligations. Absent continued oversight by this Court and the Probation office, it appears that Kilpatrick could revert to form even more quickly. On these grounds, Kilpatrick's motion for early termination of supervised release should be denied.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*s/ David A. Gardey*
David A. Gardey
Assistant United States Attorney
211 W. Fort Street, Suite 2001
(313) 226-9591
David.Gardey@usdoj.gov

Dated: January 13, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2023, I caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants of record.

*s/ David A. Gardey*
David A. Gardey
Assistant United States Attorney
